Todd SIMPSON and Cheryl
Coker, Plaintiffs,

v.

UNION PACIFIC RAILROAD CO., National Railroad Passenger Corporation d/b/a "Amtrak," James F. Abraham, City of San Leandro, and Does 1–100, Defendants.

No. C 02–4988 MHP.

United States District Court,
N.D. California.

Sept. 15, 2003.

Scott D. Righthand, Law Office of Scott Righthand, San Francisco, CA, for Plaintiffs.

B. Clyde Hutchinson, Lombardi, Loper & Conant, Theodore T. Ting, Crosby Heafey Roach & May, Alan M. Cohen, Meyers Nave Riback Silver & Wilson, Oakland, CA, for Defendants.

## MEMORANDUM AND ORDER

### re Plaintiff's Motion to Remand

PATEL, Chief Judge.

Plaintiffs filed this action in California Superior Court for wrongful death and negligence in the death of their twelve-year-old son, Jeffrey Simpson, who was hit by a train while riding his bicycle to school. After the Alameda County Superior Court sustained a demurrer filed by the San Leandro Unified School District ("the School District"), defendants National Railroad Passenger Corporation ("Amtrak"), Union Pacific Railroad, and James F. Abrams (collectively "Amtrak") removed the action to federal court. Now before the court is plaintiffs' motion for remand. Having considered the parties' arguments and submissions, and for the reasons set forth below, the court rules as follows.

## BACKGROUND

According to plaintiffs' complaint, on the morning of March 1, 2001, Jeffrey Simpson rode his bicycle to John Muir Middle School in San Leandro, California. While crossing train tracks at a pedestrian walkway near his school that was unguarded by gates, Jeffrey was struck and killed by a train operated by defendant Amtrak and driven by defendant Abrams.

On February 19, 2002, plaintiffs commenced an action in Alameda County Superior Court against both the present defendants and the School District. Plaintiffs alleged various acts of negligence that caused their son's death, including faulty operation and management of the train, inadequate protection by the city at the pedestrian crossing at which the tragedy occurred, and insufficient warning and precaution taken by the school district.

The defendants did not file a notice of removal in federal court, but instead filed an answer to plaintiffs' complaint on June 3, 2002. Defendant Amtrak acknowledges that at the time it was initially served with the state court complaint, it was unable to obtain the consent necessary from the defendant School District for removal from the state.[1] Notice of Removal ¶ 7. The

---

1. Because removal of a case with multiple defendants requires that all defendants join in the removal petition, Amtrak could not remove the action without the consent of the School District. *Hewitt v. City of Stanton,* 798 F.2d 1230, 1232–33 (9th Cir.1986).

School District demurred to the complaint on grounds that it had no duty to protect its students from dangers outside of school grounds. On July 9, 2002, the Superior Court sustained the demurrer but granted leave to amend the complaint to include the School District. Righthand Dec., Exh. A. Plaintiffs filed a first amended complaint, and the School District once again demurred. After the parties submitted papers and appeared for argument, the court sustained the second demurrer on September 30, 2002. On October 15, 2002, the remaining defendants filed a notice of removal in this court.

Plaintiffs now move to remand on grounds that defendants' removal is procedurally defective because not all defendants formally joined the removal and because the notice of removal was not filed within thirty days after either receipt of the complaint or any other voluntary action on the part of the plaintiff.[2] Defendants argue that their present removal is timely because the initial obstacle to removal was a fraudulently joined defendant, the School District. Plaintiff contests that the School District was fraudulently joined.

*LEGAL STANDARD*

■ An action is removable to a federal court only if it might have been brought there originally. 28 U.S.C. § 1441(a). The removal statute is strictly construed, and the court must reject federal jurisdiction if there is any doubt as to whether removal was proper. *Duncan v. Stuetzle,* 76 F.3d 1480, 1485 (9th Cir.1996). The defendants bear the burden of proving the propriety of removal. *Id.*

*DISCUSSION*

I. *Consent to Removal by the City of San Leandro*

■ Plaintiff first argues that the action should be remanded to state court because defendant City of San Leandro has not filed a formal document in this court stating its concurrence with the removal. In cases involving multiple defendants, all defendants must consent to removal within the required thirty-day period. *Chicago, Rock Island, & Pac. Ry. Co. v. Martin,* 178 U.S. 245, 20 S.Ct. 854, 44 L.Ed. 1055 (1900); *Parrino v. FHP, Inc.,* 146 F.3d 699, 703 (9th Cir.1998). This is commonly known as the unanimity requirement.

Attached as an exhibit to Amtrak's timely notice removal is a letter from Alan Cohen, counsel for the co-defendant City of San Leandro. Notice of Removal, Exh. D, Cohen Letter dated Oct. 9, 2002 ("Cohen Letter"). In this letter, addressed to counsel for Amtrak, Cohen identifies himself as counsel for City of San Leandro in this action, states that he has discussed removal to federal court with counsel for Amtrak and with his clients, and states that he and his clients consent to removal. *Id.* Plaintiff challenges the validity of this

---

**2.** Defendants removed the action pursuant to diversity jurisdiction and federal question jurisdiction based on the status of defendant Amtrak as a corporation charted by an act of Congress and partly owned by the United States. In the *Pacific Railroad Removal Cases,* 115 U.S. 1, 14, 5 S.Ct. 1113, 29 L.Ed. 319 (1885), the Supreme Court ruled that any action brought by or against a federally chartered corporation presented a federal question under 28 U.S.C. section 1331. Congress subsequently restricted federal question jurisdiction to cases involving federally chartered corporations for which the United States owns more than fifty percent of the capital stock. 28 U.S.C. § 1349. Amtrak is a corporation incorporated by an act of Congress, 45 U.S.C. § 501 *et. seq.,* and represents that the United States owns more than fifty percent of its capital stock. Plaintiff's claims therefore raise federal questions, and this court has jurisdiction concurrent with that of state courts. *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 507–08, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962).

consent on the basis that it is not contained within a formal court filing. *See Ford v. New United Motors Mfg., Inc.,* 857 F.Supp. 707, 708 n. 3 (N.D.Cal.1994) (stating that each defendant must file "a document in which the defendant formally concurs with the removal").

■ At least one federal court has refused to recognize agreement based solely on the representations by one defendant in the notice of removal that all defendants consent. *See, e.g., Getty Oil Corp. v. Ins. Co. of N. Am.,* 841 F.2d 1254, 1262 n. 11 (5th Cir.1988). In order to bind the consenting defendants to their decision to remove, the *Getty Oil* court held that "there must be some timely filed written indication from each served defendant, or from some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action." *Id.* Even assuming that the rule of *Getty Oil* is valid within this circuit, Cohen's letter—a signed, written document filed with the court as an attachment to the notice of removal—satisfies its requirements.

## II. *Timeliness of Removal*

Plaintiffs argue that defendants' removal to federal court was not timely as they did not file the notice of removal to federal court within thirty days of receiving the state court complaint, as required by statute. 28 U.S.C. § 1446(b). Defendants seek refuge in the fraudulent joinder theory to escape the thirty-day rule. Courts have not required defendants to remove within thirty days of receiving service where removal was *obstructed* by fraudulently joined defendants. 14C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3732 at 330–31 (1998). Defendants do not dispute that the notice of removal was filed well over thirty days past the date of filing. Instead, they argue that the School

District was fraudulently joined, and that they, therefore, filed the notice of removal in a timely fashion by doing so within thirty days of the state court's decision sustaining the School District's demurrer.

### 1. *Application of Fraudulent Joinder to the Present Case*

■ "Fraudulent joinder" most commonly refers to the principle that the inclusion of fraudulently joined non-diverse defendants will not defeat removal pursuant to a federal court's diversity jurisdiction. *See Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318 (9th Cir.), *cert. denied,* 525 U.S. 963, 119 S.Ct. 407, 142 L.Ed.2d 330 (1998). The Supreme Court first recognized fraudulent joinder as an exception to the requirement of complete diversity in *Wecker v. National Enameling & Stamping Co.,* 204 U.S. 176, 27 S.Ct. 184, 51 L.Ed. 430 (1907). The *Wecker* Court sought to prevent plaintiffs from naming sham defendants as a means of manipulating the choice of forum, as well as protecting defendants' rights to remove an action where proper:

> While the plaintiff, in good faith, may proceed in the state courts upon a cause of action which he alleges to be joint, it is equally true that the Federal courts should not sanction devices intended to prevent a removal to a Federal court where one has that right, and should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction.

*Id.* at 185–86.

Although outright fraud in the pleading of jurisdictional facts certainly would allow removal based on fraudulent joinder, *see Delgado v. Shell Oil Co.,* 231 F.3d 165, 179 (5th Cir.2000); *Hoosier Energy Rural Elec. Co-op., Inc. v. Amoco Tax Leasing IV Corp.,* 34 F.3d 1310, 1315 (7th Cir.

1994); *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993), "fraudulent joinder" is defined more broadly as a term of art that does not necessarily reflect on the integrity of plaintiff or plaintiff's counsel. *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir.2001); *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D.Cal. 1979), *aff'd*, 710 F.2d 549 (9th Cir.1983).

■ Under the Ninth Circuit rule, where a plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to the settled rules of the state, the joinder of a nondiverse defendant is deemed fraudulent, and the non-diverse defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Morris*, 236 F.3d at 1067. This objective definition reflects the doctrine's purpose of protecting a defendant's legitimate right to remove in service of the purposes of diversity jurisdiction—where the claims against an in-state defendant are so easily dismissed that they provide little protection against state court bias favoring the in-state plaintiff. *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). Simply stated, the test is whether on the face of the removed complaint there is any possibility plaintiff could prevail. *Morris*, 236 F.3d at 1068 (citing to *Cavallini v. State Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263(5th Cir.1995))(discussing the standard on fraudulent joinder).

Defendants invoke the doctrine of fraudulent joinder in a context quite different from the one in which it was developed. Fraudulent joinder has been developed and applied almost exclusively in cases in which a nondiverse defendant is fraudu-

lently joined to defeat removal pursuant to federal diversity jurisdiction. Defendants would apply the doctrine in this action where the court's jurisdiction is premised upon a question of federal law and in which the only obstacle to removal within thirty days of their receipt of the complaint was their codefendants refusal to consent to removal.

Federal courts have applied fraudulent joinder to removal based on federal question jurisdiction in only a few, narrow instances. *See Simmons v. California*, 740 F.Supp. 781, 786–87 (E.D.Cal.1990) (surveying cases applying fraudulent joinder to federal question removal), *overruled on other grounds by Kruse v. Hawai'i*, 68 F.3d 331, 334–35 (9th Cir.1995). In several cases, courts allowed removal despite baseless claims against state entities that would have precluded federal jurisdiction under the Eleventh Amendment.[3] *See McKay v. Boyd Const. Co.*, 769 F.2d 1084, 1087 (5th Cir.1985), *abrogated on other grounds by Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 386, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Commonwealth Edison Co. v. International Broth. of Elec. Workers*, 961 F.Supp. 1154, 1165–66 (N.D.Ill.1996), *abrogated on other grounds by Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 386, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Simmons*, 740 F.Supp. at 786–87; *Stephans v. Nevada*, 685 F.Supp. 217, 220 (D.Nev.1988), *overruled on other grounds by Kruse v. Hawai'i*, 68 F.3d 331, 334–35 (9th Cir. 1995). Courts have also allowed removal where a plaintiff set forth fraudulent claims under certain federal statutes that specifically preclude removal of actions

---

**3.** Under the law then in effect, the presence of these barred claims prevented removal of the entire case. The Supreme Court subsequently ruled that the presence in a state court action of claims barred by the Eleventh Amendment does not destroy federal removal jurisdiction

over the remaining claims. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 386, 118 S.Ct. 2047, 141 L.Ed.2d 364 (1998); *Kruse v. Hawai'i*, 68 F.3d 331, 334–35 (9th Cir.1995).

filed in state courts, such as the Securities Act of 1933, 15 U.S.C. § 77v(a), the Federal Employers' Liability Act, 45 U.S.C. §§ 51, *et seq.*, and the Jones Act, 46 U.S.C.App. § 688. *See Milton R. Barrie Co. v. Levine,* 390 F.Supp. 475 (S.D.N.Y. 1975) (considering whether plaintiff had fraudulently included claim under the Securities Act of 1933 to prevent removal); *Farmers Bank & Trust Co. v. Atchison T. & S.F. Ry. Co.,* 25 F.2d 23 (8th Cir.1928) (fraudulent joinder of claim under Federal Employees Liability Act); *Preston v. Grant Advertising, Inc.,* 375 F.2d 439 (5th Cir.1967) (fraudulent joinder of Jones Act claim).

In each of these cases, as in the diversity context, plaintiffs would have prevented removal from the outset by including baseless claims which, on the face of the complaint, destroyed federal jurisdiction in an otherwise removable case.[4] Application of the fraudulent joinder doctrine both prevented plaintiffs from improperly manipulating federal jurisdiction and protected defendants' legal right to remove. *Wecker,* 204 U.S. at 185–86, 27 S.Ct. 184.

The complaint filed by plaintiffs in this action did not automatically preclude removal. Nor did any aspect of plaintiffs' allegations destroy removal jurisdiction. To the contrary, the same federal question which defendants now invoke as legal grounds for removal plainly existed at the time of filing, unencumbered by any obstacle to removal evident from the face of the complaint. What stymied defendants' initial attempts to remove was not a legal barrier created by the complaint but the refusal of their codefendant, the School District, to consent to removal. The dismissal of the school district did not alter the legal issues involved in removal, but simply removed a defendant who refused to join in the notice of removal.

Under these circumstances, the fraudulent joinder exception is not necessary to prevent plaintiffs from manipulating the forum. Here the only obstacle to removal—the consent of all defendants—does not lie within the control of the plaintiffs and therefore is not susceptible to manipulation through improper allegations in the complaint. Absent collusion, plaintiffs could not have known in advance that the School District would refuse to join in removal, and so could not have affected the forum by advancing fraudulent claims against that particular defendant.

Nevertheless, applying fraudulent joinder in this context would serve to protect a defendant's legitimate right to remove caused by a plaintiff's obviously baseless claims against a non-consenting defendant. *Wecker,* 204 U.S. at 186, 27 S.Ct. 184 (noting that federal courts "should be equally vigilant to protect the right to proceed in the Federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."). Where questions of federal law arise in the complaint, a defendant possesses the right to avail himself of the expertise of the federal courts. This right should not be limited by the preferences of another defendant who wishes to remain in state court to defeat wholly baseless claims. *See Poulos,* 959 F.2d at 73 (fraudulent joinder in diversity context protects defendants' legitimate right to remove in service of the purposes of diversity jurisdiction).

---

**4.** Courts applying fraudulent joinder in cases involving claims barred by the Eleventh Amendment treated the Eleventh Amendment as completely precluding federal jurisdiction. The Supreme Court subsequently ruled that these decisions do not automatically destroy federal jurisdiction, noting that state entities may waive the Eleventh Amendment and proceed in federal court. *Schacht,* 524 U.S. at 389, 118 S.Ct. 2047.

### 2. Timeliness of Removal Under Fraudulent Joinder Exception

The problem in a cause such as the one before this court is that fraudulent joinder can be ascertained at the outset. Either the complaint states a claim that possibly may be cognizable against the purported sham defendant or it does not. It is not necessary to wait until the fraudulently joined defendant has tested the claims against it in state court and succeeded in defeating them on a motion to dismiss or demurrer nor do the other defendants need to obtain the consent of the sham defendant in order to remove. Defendants confuse the doctrine of fraudulent joinder with the exception under 28 U.S.C. section 1446(b), which, for cases that initially do not appear removable, allows a defendant to file a notice of removal "within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper *from which it may first be ascertained that the case is one which is or has become removable.*"[5] 28 U.S.C. § 1446(b)(emphasis added). *See Delaney v. Viking Freight, Inc.,* 41 F.Supp.2d 672, 673–74 & n. 2 (E.D.Tex. 1999); *see also Jernigan v. Ashland Oil Inc.,* 989 F.2d 812, 815 (5th Cir.1993) (finding removal timely under section 1446(b) where defendant filed for removal within thirty days of discovery that the only non-diverse defendant was a division of an out-of-state defendant corporation); *Poulos,* 959 F.2d at 73 & n. 4 (although defendants required to file for removal within thirty days, requirement waived by plaintiff's failure to raise it); *Naef v. Masonite Corp.,* 923 F.Supp. 1504, 1512–13 (S.D.Ala. 1996) (finding removal based on fraudulent joinder untimely where notice of removal was filed more than thirty days after defendants could have ascertained that the action was removable); *Beasley v. Goodyear Tire & Rubber Co.,* 835 F.Supp. 269 (D.S.C.1993) (remanding action where defendants did not seek removal on diversity grounds until six months after discovering that nondiverse defendant was improperly named); 14C Wright, Miller & Cooper § 3732 at 330–31.[6] Defendants argue that the present case only "became removable" for purposes of the thirty-day rule on the date on which the state court sustained the School District's demurrer, thus taking the non-consenting defendant out of the case and eliminating the only obstacle to removal. As noted above, this is not the rule of fraudulent joinder. Fraudulent joinder provides an exception to the unanimity requirement, in that the consent of a fraudulently joined defendant is not required to remove a case. *Emrich v. Touche Ross & Co.,* 846 F.2d 1190, 1193 n. 1 (9th Cir.1988). Defendants did not need

---

**5.** Courts have not allowed removal under section 1446(b) upon the occurence of any event subsequent to filing that makes a federal jurisdiction appropriate. Instead, courts have imposed the "voluntary/involuntary" rule, under which an action not initially removable must "remain in state court unless a 'voluntary' act of the plaintiff brings about a change that renders the case removable." *California v. Keating,* 986 F.2d 346, 348 (9th Cir.1993) (quoting *Self v. General Motors,* 588 F.2d 655, 657 (9th Cir.1978)). Courts have consistently refused to apply the voluntary/involuntary rule to bar removal sought on the basis of fraudulent joinder. *See e.g. Poulos,* 959 F.2d

at 72–73; *Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988) (per curiam).

**6.** Some earlier decisions did not impose a measured thirty day limit, but only required that defendants file for removal within a reasonable time of discovering that a case was removable. *See, e.g., Cook v. Pep Boys—Mannie, Moe & Jack, Inc.,* 641 F.Supp. 43, 47 n. 2 (E.D.Pa.1985). While the court follows the clear trend and adopts the thirty day rule consistent with the provisions of section 1446(b), analyzing the present case under a reasonableness standard would not change the result.

to wait for the state court's ruling in order to remove the case, but could have filed a notice of removal alleging that the School District was fraudulently joined at any point and without the consent of the School District.

■ In order to avail themselves of the claim of fraudulent joinder defendants argue that California law does not impose a duty on school districts to insure the safety of students traveling to and from school. This argument requires no factual basis other than the allegations set forth in the complaint. Defendants could have presented their argument for removal based on fraudulent joinder of the School District upon first receiving the complaint, as it was their burden to do. *Cf. Kaneshiro v. N. Am. Co. for Life and Health Ins.*, 496 F.Supp. 452, 455–56, 462 (D.Haw.1980) (finding in the context of extension of time to remove under 28 U.S.C. section 1446(b) that "the burden is on the defendant seeking removal to scrutinize the case and remove it in a timely fashion"). Because defendants could have ascertained that the School District was fraudulently joined from the complaint itself, they should have filed the notice of removal within thirty days of receiving the complaint.[7]

The court finds that defendants' did not timely file their notice of removal. Although this alone is sufficient to grant plaintiff's motion to remand, the court in the alternative addresses defendants' argument that the School District was fraudulently joined.

---

7. In arguing that the thirty days for timely removal should begin with the state court's order sustaining the School District's demurrer, defendants point to *Insinga v. LaBella, supra,* in which a federal court allowed removal pursuant to diversity jurisdiction filed within thirty days of a state courts dismissal of the only non-diverse defendant in the case.

## III. *Fraudulent Joinder of the School District*

■ Under the Ninth Circuit rule, where a plaintiff fails to state a cause of action against a resident defendant and the failure is obvious according to the settled rules of the state, the joinder of a non-diverse defendant is deemed fraudulent, and the non-diverse defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Morris,* 236 F.3d at 1067. Even assuming that defendants' removal was timely, the court finds that plaintiffs' claims against the School District were not so obviously meritless as to be fraudulently joined.

Plaintiffs claimed in state court that the School District could be held liable for the death of a student crossing a high speed train intersection when the school officials knew or should have known, by reason of a prior accident at the same intersection, that students would be forced to cross the nearby train intersection while high speed trains were passing and failed to educate students and parents of the dangers, failed to provide crossing guards.

■ Under California law, governmental tort liability requires an authorizing statute which creates a mandatory duty on the part of the governmental entity to prevent against the type of damage sustained by a plaintiff. *Haggis v. City of Los Angeles,* 22 Cal.4th 490, 498–99, 93 Cal.Rptr.2d 327, 993 P.2d 983 (2000). California Education Code section 44808 sets forth the liability of a school district for harm to students as follows:

> The *Insinga* court, however, explicitly disclaimed basing its findings on fraudulent joiner, 845 F.2d at 254–55 & n. 4, and instead based its holding that removal was proper on the fact that the state trial court had found that it lacked jurisdiction over the non-diverse defendant, *id.* at 254.

[N]o school district ... shall be responsible or in any way liable for the conduct or safety of any pupil of the public schools at any time when such pupil is not on school property, unless such district ... has undertaken to provide transportation for such pupil to and from the school premises, has undertaken a school-sponsored activity off the premises of such school, has otherwise specifically assumed such responsibility or liability or has failed to exercise reasonable care under the circumstances.

Plaintiffs rested their claim against the school district in the last catch-all provision of "reasonable care under the circumstances."

As proof that plaintiffs should have known that their claim against the school district was foreclosed by state law, defendants point to *Searcy v. Hemet Unified School District*, 177 Cal.App.3d 792, 223 Cal.Rptr. 206 (4th Dist.1986). The *Searcy* court held that a school district was not liable when a six-year-old girl was injured by an automobile on her way to school, finding that "[a]s a general rule school districts are under no obligation to supply traffic protection to students en route to and from school." *Id.* at 804, 223 Cal. Rptr. 206. *Searcy*, however, is only a single

case from a California Court of Appeals in different district than the one in which plaintiffs filed. There is no case from the California Supreme Court foreclosing plaintiffs' claims against the school district,[8] nor is there a clear consensus among the California Courts of Appeals on the issue of a school's duty to students on the way to school. Indeed, defendants do not cite any case other than *Searcy* to show that school districts are not liable for injuries incurred by students on their way to school.[9]

California courts have been reluctant to set bright line rules restricting the liability of school districts for injuries to students which occur off school property. Courts have stressed that a negligent school district "cannot automatically escape liability simply because the injury occurred off the school property." *Perna v. Conejo Valley Unified School Dist.* 143 Cal.App.3d 292, 295, 192 Cal.Rptr. 10 (2d Dist.1983); *see also Hoyem v. Manhattan Beach City School Dist.* 22 Cal.3d 508, 517, 150 Cal. Rptr. 1, 585 P.2d 851 (1978). Instead, a school "may be held liable for injuries suffered by a student off school premises and after school hours where the injury resulted from the school's negligence while

---

**8.** In *Hoyem*, the California Supreme Court indicated that the legislature in drafting section 44808 may have adopted the language of two prior state court opinions holding that "a school district has no responsibility to see that children travel safely to and from school unless it undertakes to provide transportation." *Hoyem*, 22 Cal.3d at 518, 150 Cal.Rptr. 1, 585 P.2d 851. The court made this observation only in order to distinguish the issue before it by noting that "neither case, nor section 44808 which followed them, in any way limits a school district's responsibility to supervise students during school hours on school premises, and these authorities provide no aid to defendant in the instant case." *Id.* The *Hoyem* court's remarks in dicta were not relied upon either by the school district in their demurrer or by defendants in their opposition

to remand, and do not obviously foreclose plaintiffs' claim.

**9.** Defendants do cite two other cases, *Gilbert v. Sacramento Unified School Dist.*, 258 Cal. App.2d 505, 508, 65 Cal.Rptr. 913 (1968), and *Wright v. Arcade School Dist.*, 230 Cal.App.2d 272, 278, 40 Cal.Rptr. 812 (1964), for the proposition that nothing in California statutory law creates a duty of care on the part of schools toward children en route between home and school. Both of these cases, however, predate the enactment of California Education Code section 44808 and the catch-all provision on which plaintiffs based their claim. *See Hoyem*, 22 Cal.3d at 517 n. 2, 150 Cal.Rptr. 1, 585 P.2d 851 (discussing the legislative history of the catch-all claim in the 1972 adoption of the provision).

the student was on school premises." *Brownell v. Los Angeles Unified School Dist.* 4 Cal.App.4th 787, 795, 5 Cal.Rptr.2d 756 (2d Dist.1992); *Hoyem,* 22 Cal.3d at 515–16, 150 Cal.Rptr. 1, 585 P.2d 851.

In *Perna,* a ten-year-old student who was asked to stay after school to help grade papers was hit by a car when crossing an intersection monitored by a crossing guard during normal dismissal hours. *Perna,* 143 Cal.App.3d at 294, 192 Cal. Rptr. 10. The California Court of Appeals allowed plaintiffs to proceed on a theory that the district was liable because the teacher knew or should have known that the school crossing guard would be gone from intersection by the time the student left school. The *Perna* court stressed that its decision did not rest on a failure to supervise the child off-premises or to provide crossing guards. *Id.* at 296, 192 Cal. Rptr. 10. Rather, the court found that by releasing the pupil late, her teacher failed to exercise due care in the supervision of the student while on school premises. *Id.* While *Perna* might be distinguished from the present case on various grounds, the decision certainly belies defendants' categorical contention that school districts have no duty to prevent accidents which occur en route to and from school.

While plaintiffs do not point to any cases in which courts have found schools liable for injuries sustained by students while traveling to school, plaintiffs do not bear the burden of proving their claims valid. Rather, the burden rests with defendants to show that plaintiffs' failure to state a claim was "obvious according to the settled rules of the state." *Morris,* 236 F.3d at 1067. Defendants have not carried their burden. Plaintiffs' claims that the school failed to warn and educate its students about the risks of the nearby train do not obviously fail under the California courts' rather murky distinction between on-premises and off-premises causes of off-premises injuries. The court finds that plaintiffs' claims against the School District were not fraudulently joined. .

### IV. Voluntary/Involuntary Rule

■ Nor are defendants entitled to take advantage of the voluntary/involuntary exception that allows removal upon the voluntary action of the plaintiff that first makes the case removable. Pursuant to that rule an action not initially removable must "remain in state court unless a 'voluntary' act of the plaintiff brings about a change that renders the case removable." *California v. Keating,* 986 F.2d 346, 348 (9th Cir.1993) (quoting *Self v. General Motors,* 588 F.2d 655, 657 (9th Cir.1978)). Courts have consistently refused to apply the voluntary/involuntary rule to bar removal sought on the basis of fraudulent joinder. *See, e.g., Poulos,* 959 F.2d at 72–73; *Insinga v. LaBella,* 845 F.2d 249, 254 (11th Cir.1988) (per curiam). Furthermore, when the plaintiff has unsuccessful resisted a motion to dismiss or demurrer and upon the dismissal claims or parties such that the case becomes removable, courts deny removal because the act giving rise to dismissal is not voluntary on the part of the plaintiff. Thus, in this case defendants cannot avail themselves of this rule. Again, the removability was ascertainable, if at all, upon the service of the first complaint. The District's ability to prevail on its motion to dismiss or demurrer does not work to make the case removable.

For all of the reason set forth above, removal in this case was improper

### V. Attorney's Fees

Alleging that defendants' removal of this action was entirely baseless, plaintiff seeks attorneys' fees and costs pursuant to Rule 11 of the Federal Rule of Civil Procedure. Rule 11 provides for sanctioning of claims

and legal contentions which are not "warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law." Fed.R.Civ.P. 11(b)(2). The court finds that defendants' arguments on the removal/remand issue are not frivolous.

However, the removal statute also provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447©. The court need not find the motion rises to the level of sanctionable conduct under Rule 11 to assess attorney's fees and costs under section 1447©. Where the court finds that removal is improper the court has discretion to impose attorneys' fees and costs under subparagraph © and where the court's remand is correct as a matter of law these fees and costs will be affirmed. *Kanter v. Warner–Lambert,* 265 F.3d 853, 861(9th Cir.2001); *Gibson v. Chrysler Corp.,* 261 F.3d 927, 949 (9th Cir.2001).

Accordingly, plaintiffs shall submit to this court within thirty (30) days of the date of this order their declarations and contemporaneous records in support of attorneys' fees and expenses pursuant to section 1447© and defendant shall file its opposition, if any, solely as to the reasonableness of the fees and costs.

*CONCLUSION*

For the foregoing reasons, plaintiffs' motion to remand is GRANTED. Plaintiffs' motion for attorneys' fees and costs is DENIED insofar as Rule 11 and GRANTED insofar as section 1447©.

IT IS SO ORDERED.